Call the first case for argument, please. The first case for argument on Wednesday, January the 10th, 2024, case number 21-1207 from the District of North Dakota, Eric Poemoceah v. Morton County, et al. Ms. Dugan. Thank you, Your Honors. Mary Ann Dugan for the appellant plaintiff, Mr. Poemoceah, and I request five minutes for a rebuttal if that works out. Thank you, Your Honors, for allowing oral argument in this case. As you know, there are several issues before the court. Unless the court has a preference, I would begin with the excessive force claim, which I think took up the bulk of the briefing. As you know, this was thrown out on a 12b-6 motion based primarily on qualified immunity for the officers who injured Mr. Poemoceah during the Standing Rock protests. Therefore, your review is de novo, and we take as true the allegations in the complaint, including all inferences that could be taken in Mr. Poemoceah's favor. The court below in the record at A-41 acknowledged that the law has clearly established that tackling a person who is peaceful, who is not fleeing or resisting, may constitute excessive force and should not be thrown out as a matter of law on the pleadings. Can I ask just an initial question? How many of the defendants is this particular claim against? Is it just Swenson and the Doe defendants? Yes, Your Honor. The excessive force is against Swenson and the Doe defendants, yes, Your Honor. Mr. Laney was involved in the actual arrest and the forced march to the van, but not the tackle. So the lower court's decision in large part turned upon the court's view that Mr. Poemoceah was fleeing, and therefore no reasonable officer would have not believed it was okay, it was okay, it was reasonable for an officer to believe it was okay to assault him. But this is an issue of fact, which has, it's similar to the cases that we cited both in the 28J letters and in the opening and reply briefs, where The difficulty I have with the presentation, like the briefs, makes no mention of our en banc decision in Kelsey, which is controlling on our panel, in which a divided en banc court admittedly addressed all its questions of tackling a passive resisting suspect, misdemeanor suspect. And in my view at page 830 of that opinion, our court describes the district court's reasoning exactly the way you're arguing and the way you're describing the district court's reasoning here, and then said we reject that. And there's a long passage, and it explicitly involved the takedown or tackle of someone who was walking away, but not obviously endangering anyone, although there was someone off in the distance who actually perceived a threat. So you've got to deal with Kelsey. That's our law. Otherwise you're arguing to the en banc court. Okay, and I am not remembering the facts of that case, but was that a summary judgment decision, or 12B6? Because I think in general these cases have gone at least to summary judgment, and even there this court has reversed in similar situations where summary judgment was granted, or has upheld the denial of summary judgment, such as most recently. It was at summary judgment, but the question is whether it seems to me the undisputed facts, almost the facts as pleaded, put this case squarely into the Kelsey target. Well, Your Honor, here... We have affirmed qualified immunity at 12B6 stage many times. Here, Your Honor, there was no order for him to stop. There was no statement that he was under arrest. He, as in Nieder's most recently, which Judge Kelly joined, there was a fact issue of whether the person's reaction was a flight or simply a reaction to being assaulted by a police officer suddenly. Similarly, there's issues of fact regarding compliance in BAUD, B-A-U-D-E. That's the Kettling case that was recently decided, in which Judge Kelly joined. There's the Lombardo Supreme Court case regarding resistance, where the court very recently said that the Graham test requires balancing of all the factors, including whether, even if somebody was fleeing, there has to be balancing. And that there's generally an issue of fact as to what a reasonable officer would have perceived as to resisting or fleeing. That's not a question of fact. Well... The objectively reasonable aspect of the analysis is the ultimate question of law, which can be decided by the court at any stage of the process. Well, this court said otherwise in all the cases cited in our 28J letters, as well as the reply brief starting on page 5 and going through page 12. In Wong's son, the Supreme Court said it's an issue of fact. In Lombardo, the Supreme Court said it's an issue of fact. In Mitchell, this court, on a 12B6 motion against one of the same defendants, Kirkmeyer, said that the use of less lethal weapons... So you think a jury gets to decide whether Officer Swenson was objectively reasonable in tackling? In viewing your client as, if not fleeing, refusing to stop and stay? Well, at least it gets to the summary judgment stage, Your Honor, where the burden would be on the plaintiff to present some evidence to rebut the... Why do we waste everybody's time if there's enough on the face of the pleadings to, for qualified immunity purposes, fit this within Kelsey? Because the court in the cases I've just cited repeatedly has said... How many are after Kelsey and how many... A circuit. I don't care about any other circuit. I'm talking about Lombardo, Supreme Court, Wong's son, Supreme Court. Those are way pre-Kelsey. Kelsey relied on the Casella, which is far later than the Supreme Court cases you're relying on. And then we have Escondido. This has been an evolving process with respect to qualified immunity and access for its cases. The Supreme Court has evolved, and we have tried to keep up with that. Very recently, less than two years ago, if I recall correctly, Lombardo, the Supreme Court, clearly said that the Graham factors require balancing and involve issues of fact. Here, the issue of fact is whether a reasonable officer would have perceived that Mr. Pomachia was fleeing when there was no statement he was under arrest. There was no order given to him to stop or do anything. He was simply charged at and assaulted with his pelvis being broken. Sorry. I just have a procedural question. Sure. Was the video before the district court? The video was, I'm not sure if it was in, there was a large amount of material that was submitted by the defendants in asking for judicial notice. And yes, I believe in our response to the 12e6 motion, we inserted a URL for the video, yes. Apparently, though, no one objects to the video being viewed by the court in this context, right? Correct. We requested. Okay, thank you. We requested judicial notice and it was not. Well, okay. Okay. What role does the executive order play in all of this? Well, the executive order was an order saying that for the safety of the protesters, because of flooding, that they should leave.  Like maybe a couple of hours? Correct, Your Honor. On the same day, I think. So does that do any work in terms of letting your client know that he needs to be off the property? Everyone knew, and this is undisputed, that they were being ordered to leave. What was not ordered was for Mr. Pomekey to do anything in particular at the moment he was assaulted. For example, stop, lay on the ground, whatever. No order was given. If you watch the video, the first 36 seconds are literally all you need to watch unless you want to watch him being forced to walk on a broken pelvis. There is no order given, no statement that he's under arrest. He simply is pleading with them as human beings, and then dozens of officers charge at him and break his pelvis. So the executive order, and I see I'm running into my rebuttal time, but thank you, Your Honor. The executive order simply said that for safety, people needed to leave, and they were ordered to leave. But he wasn't in particular order to do anything before he was assaulted. So there was, just briefly, there was no announcement, or was there, to the crowd, the time has passed, you need to be off the property? I think earlier in the day there was, not at the moment he was trying to have a conversation, and in particular, as alleged in the complaint, trying to negotiate a peaceful movement of the elders out of the camp. Thank you, Your Honor. Mr. Grinnells? Justices, Counsel, my name is Sean Grinnells. I'm here representing the defendants of Pelley's Morton County, Morton County Sheriff Kyle Kirkmeyer, Bismarck Officer Benjamin Swenson, and former Cass County Sheriff Paul Laney. Opposing counsel has admitted that there was an executive order, there were actually two executive orders by two successive North Dakota governors for the evacuation, mandatory evacuation of the area. You're talking too soft and fast for me. At the time of the incident at issue, there were two evacuation orders from two successive North Dakota governors for this location, one in November of 2016, and another one week prior to this incident on February 15th of 2017. Both of them were mandatory evacuation orders. The second evacuation order that's attached to the appellant's reply brief is Exhibit A. Expressly noted that the protesters had not complied with the first mandatory evacuation order from November of 2016, and therefore set a firm deadline of 2 p.m. on February 22nd, 2017 for the mandatory evacuation of this area. That's not in dispute in this case. That alone establishes officers had probable cause to effectuate the arrest of Mr. Pomakea, as well as every other person who was in the mandatory evacuation area without authorization from the superintendent of the Highway Patrol. So is it your position that he should have just understood that from 2 p.m. on, he was not lawfully there under the executive order, and therefore just being there was a law violation, and so they needed to go and take him? So on that point, there's two issues here. One is, was there probable cause for the arrest? And then secondly, was it justified to use a tackle to apprehend him? So yes, just his being present established probable cause. And of course, this whole analysis is from the perspective of what the officers on the scene, what was objectively reasonable for them to believe at the time. They were aware of these evacuation orders from the governor that was issued to the local political subdivisions to enforce. So if I could interrupt there, just so I understand, and I apologize if I should know this, but the executive order, that's something they could arrest on, even though it came from, I guess, a temporary executive order? Yes. The executive orders, and in the executive orders, the governor lists the law on which he's issuing them, and one of them is the Emergency Declaration Act under North Dakota law. And a violation of that is? So that counts as just a statutory violation? It counts as a statutory violation. Also, the protesters at this location were also, they were trespassing at the time too. So, and I'll get to this in a moment, the facts as alleged by the plaintiff, the admissions made, establish obstruction of a government function. He admits that he was 15 feet from a line of riot-clad gear officers negotiating the evacuation of the elders, a peaceful evacuation of the elders. In other words, he wasn't negotiating his own removal from the vicinity. He was negotiating for someone else. He asked the officers to lay down their badges as he's walking towards them, a further act of defiance and aggression towards the officers, and that's when the officers proceeded towards him. Is that viewing the facts? I mean, this is at 12B-6. He's saying it was peaceful and that was not what I was intending to do. Is that a proper inference to make at this stage? So this is at 12B-6, but what he's admitting he did, again, his admission he's located at that particular vicinity and admission that there was mandatory evacuation orders establishes he was violating the law simply by being there. Now, I know they want to focus this case on whether or not the officers felt reasonably threatened by his moving forward towards the police line. I don't think the court even needs to go there because one of the factors on justification for use of force Now, Kelsey makes that clear. Kelsey makes that clear. But one of the factors for use of force was the person fleeing, with a fleeing arrest. His own admissions establish he was fleeing arrest. He wants to try and characterize it as he was afraid and trying to be a defensive tactic by running away from the officers. But he didn't turn around and begin to flee from the officers. He first stepped forward, made it perfectly clear from his admissions that he wasn't leaving voluntarily. It doesn't have to be fleeing, does it? It doesn't have to be fleeing. It can be resisting arrest. It can be evading. But in this case, it's clear he was. He approached and then when they responded. When they came forward, he ran. He ran for 30 feet before they caught him, and he admits he knew they were chasing him, and yet he continued to proceed away from them. I know they've stated in their opposition brief, or excuse me, in their opening brief, that he was fleeing in a direction back towards the protester camp, and so he wasn't really fleeing because the camp was surrounded by law enforcement, is the allegation. Well, he's fleeing to the location he felt safest with the rest of his comrades who were disobeying the evacuation order as well. So that was fleeing. This is clear. There is no question of fact on that issue. Does the record provide any explanation of how people on the scene would have interpreted a request or demand to lay down your badges? Could you repeat that question? Was there anything in the record? Was that your question? Does the record reflect how either or both sides would have interpreted what that meant at the time? Well, I suspect there's a history to that. There is. I just wonder, is it part of the record? Well, the plaintiff did admit in his pleadings, and the district court noted that he alleged that in the months leading up to this incident, the locations of the protests, including this location, had been turned into a war zone between law enforcement and the protesters. The district court noted the allegations were pointing out a tense situation. The officers were obviously there. He alleges there were 30 officers in a police line wearing riot gear. So, you know, there's a reason for that. He admits they were there to evacuate the camp. That's not disputed. What did the district court mean when it said it was a war zone? That's the plaintiff's allegation. So he's just repeating what the plaintiff alleged. I mean, we don't really know what that means, right? Well, yeah. It sounds pretty desperate, but I don't know what that means exactly. But anyway, go ahead. Sure. Well, as to what war zone means, you know, I guess if we're limited to the pleadings as to, you know, there was a history out there. The pleadings don't explain what that history necessarily was, other than protesters had established themselves in encampments south of the Cannonball River, including this location. We don't need more facts. I mean, I looked at the video several times, and it seems to me that the video shows exactly the situation exactly as the plaintiff described it. It seems to me there's some difficulty here saying that the plaintiff was acting in a threatening way. Well, again, Your Honor, I don't believe the court even has to address that issue, because I think just his act of fleeing from the officers, that alone justified the use of a tackle. The act of what? The act of fleeing from the officers. The act of fleeing, but, I mean, I don't know if that's fleeing in the sense in which cases use the word. I mean, he was certainly running away, but I suppose if I were being, if I perceived myself as being unlawfully pursued by somebody, I think I'd probably run away too. But it's not clear. I don't think there's a good case here that he was resisting arrest because he was never told that he was under arrest. There was never a warning given. They just suddenly, you know, one, as I see the video, one officer sort of in the middle of the pack, four or five seconds after this gentleman had moved forward, broke ranks, and then everybody started running. I mean, that's a reasonable inference from the video. Well, I would disagree with that, Your Honor. I'm sorry? Just based on, I would disagree with that analysis. His admissions are he knew that they were there to evacuate the camp, and he wasn't complying with that. He was negotiating for other people to leave the camp, and he's asking the officers to lay down their badges. In other words, don't perform their public duty. Oh, the board, okay. So, you know, there is case law in the Eighth Circuit that says even when you have a misdemeanor involved, you can use force to apprehend someone who's fleeing to stop them and to effectuate an arrest. And that's our position, is that's what happened here, is that. . . So how is this case different from Kirchmeier? So in Kirchmeier, and again, that's a 12B6 issue. Is that Mitchell versus Kirchmeier you're referring to? Yeah. So in that particular case, the plaintiff's allegation was he was standing with his hands in the air, perfectly peaceful, not doing anything unlawful, wasn't fleeing, and he was shot with a less lethal munition in his eye socket. Okay. So that one's factually distinguishable from our present case. It wasn't a case involving an allegation of fleeing. The question is, I understand it's a factual difference, but the question is whether it seems to me a reasonable jury might find that there's no real evidence of flight from arrest in the way that term is used technically. He was certainly running away, but there are cases that indicate that merely running away isn't necessarily an unlawful resistance. Well, as the district court found, Your Honor, the parties hadn't cited any cases. It was factually similar to our situation where the suspect advances on officers involving like a mandatory evacuation area. The suspect knew he wasn't supposed to be there, runs for 30 feet before being tackled, makes no attempt to stop at any point to allow the officer to effectuate, to handcuff him. He keeps running, so there's no way to stop him. Qualified immunity requires a case that's exactly on all fours. I mean, you never get identical cases, or almost never. Cases are like snowflakes, so you've got to make some sort of generalization about them. At some level, I realize that qualified immunity requires you to look at the exact circumstances in which the claim arose, but at some point, you've got to make some level of generalization because you never get identical cases, or almost never. And on that point, Your Honor, I believe that the case law says that the precedent must squarely govern the situation so that the officer on the scene, that all reasonable officers would have understood that their conduct violated a constitutional right? Here's the standard on this. Our in-bank case in Kelsey, quoting Ashcroft v. L. Kidd, a plaintiff must identify either controlling authority or a robust consensus of cases of persuasive authority that place the statutory or constitutional question beyond debate at the time of the alleged violation. Correct, Your Honor. Now, that's our law. Correct. Because it's the Supreme Court's law. And as the district court, in his decision, Judge Treanor noted that there wasn't a general consensus of law on this issue that would have found that the conduct of the officers at issue clearly violated a constitutional right of Mr. Pomakea. Yeah. I think, I mean, we've, in Mitchell v. Kirchmeier, we've said we've held time and time again that if a person is not suspected of a serious crime, and this isn't one, within the meaning of Kirchmeier, is not threatening anyone, it seems to me there might be a question of fact there, and is neither fleeing nor resisting, then it is unreasonable for an officer to use more than de minimis force. And so I'm wondering why you don't have a question of fact here with respect to whether this person was fleeing within the meaning of the technical term of fleeing. And there again, Your Honor, I guess our position is that the plaintiff's admissions as to the totality of the circumstances that was being presented to the officers at this time, that he was fleeing. There really is no question of fact on the question of fleeing. I'm talking about the legal definition of flight in the context of an arrest, which is similar, it seems to me, to resisting arrest. You're fleeing from an arrest knowingly. And I don't know that, I don't mean to be rhetorical here, but I don't know that this case is that clear. I'm not sure there's not a question of fact here on that. Well, I see my time has almost expired, Your Honor. But again, I guess we would just disagree with that analysis. He understood he wasn't supposed to be there. He was telling officers late on their badges there was probable cause to arrest. He was running away from the officers. They had to chase him for 30 feet to capture him. Our position is that this case does squarely fall within the line of cases where you can use force to apprehend someone who's fleeing arrest. Thank you. Thank you, Your Honors. I've checked the briefs. I don't see any mention of Kelsey. Your Honors, if I would have permission to file a one- or two-page supplemental brief on Kelsey, I would appreciate that since it's come up so much in this argument. I don't know how it wasn't found before, frankly. I'm not sure, Your Honor. It's not ringing a bell. I apologize. We can read the dissent in Kelsey. I can't imagine you'd say any more than the dissenters would. Okay, thank you. So in Mitchell v. Kirkmeyer, the court cited a case called Small v. McChrystal where the plaintiff had been assaulted by police while he was walking away from them towards a trailer. But the court held that he was not in flight or resisting arrest because he had not been told he was under arrest. And that's 708 F. 3rd at 1005. I did cite that in the 28-J letter about Mitchell v. Kirkmeyer. So I just wanted to remind the court of that. The war zone phrasing, I just searched for that. It only came up once in the complaint in passing. And I think our young associate may have decided to be a bit purple in his prose. And I don't think it's relevant to any of the claims here. But Graham makes clear that the court must look at the totality of all the facts, that this is generally an issue for the jury. The court has to balance the severity of the crime along with the threat to the officers and whether he was resisting and whether he was fleeing. The executive order did not say anything. That's on the merits. Graham wasn't a qualified immunity case. Well, there's still issues of fact in qualified immunity in general unless there's a clear issue of law, which is not the situation here. That's the question. The executive order did not say anything about criminal penalties. It was a safety evacuation. As in several of the cases we cited, he was not given any opportunity to comply. He was not told he was under arrest. So is your view of the authority or the power of the executive order in this case different than your opposing counsel? Yes, Your Honor. The executive order, even if violating the executive order was a crime which we dispute, if that was a crime, the court must still weigh the severity of that crime against the force that was used. And as for the fleeing, Wong-Sun, the Supreme Court made clear that that's an issue of fact when there's just like a sudden appearance of police. Wong-Sun was where the police came and pretended to be picking up laundry and then said, we are police officers. And the guy slammed the door and ran and was assaulted and arrested. And they said it's still an issue of fact whether he was fleeing or just a surprised retreat, which is what we argue happened here. The trespassing also is an issue of fact, which is a very complicated issue of Indian law and treaties. And as for stepping forward, the video makes clear it was just a couple of steps in kind of entreating while he was speaking. And I ask that the court reverse and allow this case to go forward. Thank you, Your Honors. Thank you, counsel. The case has been thoroughly briefed and well argued, and we will take it under advisement.